# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ICEBERG ASSOCIATES LLP,

Plaintiff,

v.

DYNAMIC DATA TECHNOLOGIES, LLC AND MAXLINEAR, INC.,

Defendants.

Case No.:  3:22-cv-01084-RBM-DDL

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DYNAMIC DATA TECHNOLOGIES, LLC'S MOTION TO DISMISS PLAINTIFF'S CLAIMS AGAINST DYNAMIC DATA TECHNOLOGIES, LLC**

**[Doc. 14]**

On July 25, 2022, Plaintiff Iceberg Associates LLP ("Plaintiff") filed the instant action ("Complaint") against Defendants Dynamic Data Technologies, LLC ("Dynamic Data") and MaxLinear, Inc. ("MaxLinear") (collectively, the "Defendants"). (Doc. 1.) On September 23, 2022, Dynamic Data filed a Motion to Dismiss Plaintiff's Claims against Dynamic Data pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (Doc. 14.) Plaintiff filed a response in opposition on October 10, 2022 (Doc. 22), and Dynamic Data filed a reply on November 14, 2022 (Doc. 29). For the reasons discussed below, Dynamic Data's Motion is **GRANTED IN PART** and **DENIED IN PART**.

/ / /

1

# I.    BACKGROUND

Plaintiff is a limited liability partnership specializing in patent brokerage. (Doc. 1 at 2–3.) Dynamic Data is a limited liability company and is in the business of purchasing patents for purposes of "threatening or filing enforcement proceedings" for revenue, rather than marketing or using the inventions covered by the patents. (*Id.* at 2.) MaxLinear is a publicly traded corporation that "builds and sells networking and communications technology." (*Id.*)

The facts alleged in the Complaint are as follows. On November 30, 2016, Plaintiff and MaxLinear entered into a written agreement titled Transaction Representation Agreement ("TRA") in which Plaintiff agreed to act "as MaxLinear's exclusive worldwide representative to facilitate and promote the sale, assignment and/or licensing" of specific patents (the "Patents") that MaxLinear wanted to sell or license. (*Id.* at 3–4.) In exchange for Plaintiff's services, MaxLinear agreed to pay Plaintiff a designated amount[1] immediately upon executing the TRA and a percentage of any amount obtained by or due to MaxLinear "resulting from any license, assignment or any other transfer of the Patents." (*Id.* at 4.) Plaintiff and MaxLinear "extended the TRA's initial six-month term on May 11, 2017 for another six months to November 30, 2017." (*Id.*) The TRA included a provision that stated MaxLinear would be required to pay Plaintiff its full commission for any patent transaction Plaintiff was retained to promote so long as it was completed within twelve months after the expiration of the term. (*Id.*) Thus, "if MaxLinear was able to sell or

---

[1] On August 19, 2022, Dynamic Data filed a Motion to Seal the Complaint and File a Redacted Public Version which requested the Court seal confidential information related to Dynamic Data's "pricing information relating to both patent acquisition pricing and patent licensing pricing." (Doc. 10.) Similarly, on August 23, 2022, Dynamic Data filed a Motion to Seal the Unredacted Version of the Memorandum of Points and Authorities in Support of its Motion for the same reason. (Doc. 12.) The Court granted both requests on October 7, 2022. (Doc. 19.) In an effort to preserve the sealed information, the Court will use vague references to the percentages and dollar amounts which are the subject of this lawsuit.

license its specific Patents listed in the TRA [any time] before November 2018, or if it continued to receive commissions from the sale or licensing of Patents thereafter, MaxLinear was still obligated to pay [Plaintiff] its commission." (*Id.*) After executing the TRA, Plaintiff contends it spent "significant time and resources performing its duties marketing and ultimately selling MaxLinear's Patents." (*Id.*)

On April 18, 2018, MaxLinear entered into a written Patent Purchase Agreement ("PPA") with Dynamic Data in which Dynamic Data agreed to purchase patents from MaxLinear. (*Id.* at 5.) Under the PPA, Dynamic Data agreed to pay MaxLinear and Plaintiff an increasing proportion of the revenue Dynamic Data was able to generate from the patents ("Buyer Proceeds"). (*Id.*) The percentage Dynamic Data was obligated to pay MaxLinear and [Plaintiff] under the PPA "increased as the amount of Buyer Proceeds increased" with defined limits. (*Id.*) The Complaint alleges that "[f]or each increased step, [Dynamic Data] was always obligated to pay [Plaintiff]" a specific percentage of what it paid to MaxLinear. (*Id.*) Therefore, Plaintiff contends that pursuant to the terms of the TRA and PPA, Plaintiff is "entitled to be paid from MaxLinear" a percentage of the commission of any money MaxLinear receives from Dynamic Data, and separately receive from Dynamic Data a percentage of the proceeds Dynamic Data paid to MaxLinear. (*Id.*)

Moreover, Plaintiff explains that on or about Apil 20, 2018, Dynamic Data paid Plaintiff directly an Upfront Guaranteed Payment as set forth in the PPA. (*Id.*) However, Plaintiff believes that as of June 2019, Dynamic Data was able to generate a certain amount in Buyer Proceeds "monetizing and enforcing the Patents." (*Id.* at 6.) Accordingly, [Dynamic Data's] receipt of such Buyer Proceeds resulted in [Dynamic Data] paying MaxLinear" a certain amount. (*Id.*) "However, despite that payment, and despite [Dynamic Data]'s obligation to pay [Plaintiff] its separate proportionate share of the same Buyer Proceeds, [Dynamic Data] has refused and failed to do so despite multiple demands." (*Id.*) Moreover, Plaintiff contends that "[a]s a result of its receipt of its portion of Buyer Proceeds from [Dynamic Data], MaxLinear also became obligated to pay [Plaintiff]" a specific amount of separate commission under the TRA." (*Id.*)

3:22-cv-01084-RBM-DDL

Thus, on July 25, 2022, Plaintiff filed the instant action against MaxLinear and Dynamic Data alleging the following causes of action: (1) breach of the TRA against MaxLinear, (2) breach of the PPA against Dynamic Data, and (3) an accounting claim against both Defendants.  (*See* Doc. 1.)   The Complaint also requests compensatory damages and attorneys' fees and costs.  (*Id.* at 9.)  On September 23, 2022, Dynamic Data filed the instant Motion arguing that Plaintiff's claims against Dynamic Data should be dismissed because they fail to allege "plausible breach of contract and accounting claims under controlling New York law."  (Doc. 14–1 at 8.)   MaxLinear filed an answer to Plaintiff's Complaint on September 26, 2022.  (Doc. 15.)

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from

that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).  When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.   DISCUSSION

### A.   Request for Judicial Notice

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. FED. R. CIV. P. 12(d).  A court may, however, consider materials subject to judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  Under Federal Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a party's request, of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).  A court may also take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal citations omitted).

Here, Dynamic Data requests the Court take judicial notice of five exhibits: (1) United States Patent No. 7,316,622 (Ex. 1); (2) United States Patent No. 7,539,391 (Ex. 2); (3) United States Patent No. 7,933,411 (Ex. 3); (4) United States Patent No. 6,208,350 (Ex. 4); and (5) decision "Denying Institution of *Inter Partes* Review of United States Patent No. 8,135,073" in *Unified Patents Inc. v. Dynamic Data Technologies, LLC*, IPR2019-01085 (PTAB), which was filed on December 3, 2019 before the United States Patent and Trademark Office's Patent Trial and Appeal Board (Ex. 5).  (Doc. 14–2 at 4.)  Plaintiff filed an opposition to Dynamic Data's request for judicial notice and explains that "[w]hile the Court can take judicial notice of the patents themselves, doing so does not conclusively establish facts contained therein."  (Doc. 22–2. at 2.)

5

The Court takes judicial notice of United States Patent Nos. 7,316,622, 7,539,391, 7,933,411, and 6,208,350 in Exhibits 1, 2, 3, and 4.  FED. R. EVID. 201(b); *see Klang v. Pflueger*, No. SACV1301971JVSDFMX, 2014 WL 12587028, at *1 (C.D. Cal. Oct. 2, 2014) (taking judicial notice of three patents); *see also U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies") (internal quotations omitted); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG POR, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) ("[i]nformation on government agency websites has often been treated as properly subject to judicial notice").  The Court also takes judicial notice of the decision "Denying Institution of *Inter Partes* Review of United States Patent No. 8,135,073" in Exhibit 5.  *See Lee*, 250 F.3d at 689 (explaining courts may take judicial notice of public records).  To the extent Plaintiff opposes the truth of the contents of the documents, the Court notes it is not bound to take judicial notice of the truth of the matters asserted therein.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth").

B.   Failure to State a Claim

Dynamic Data argues Plaintiff's claims against Dynamic Data should be dismissed because Plaintiff "fails to allege plausible breach of contract and accounting claims under controlling New York law." (Doc. 14–1 at 8.)  Plaintiff counters that California law applies to the instant dispute and that, in accordance with California law, the Complaint states a claim upon which relief can be granted against Dynamic Data.[2]  (Doc. 22 at 4.)

---

[2] However, Plaintiff does agree to dismiss its accounting claim and conditionally agrees to dismiss its attorneys' fees claim, which is discussed in detail below.  (Doc. 22 at 4, 18–19; *see infra* pp. 13–14.)

6

**a.      Second Cause of Action – Breach of Contract**

*i.      Choice of Law*

As an initial matter, Dynamic Data argues the PPA between Dynamic Data and MaxLinear has an enforceable New York choice of law provision and, thus, New York applies to the instant breach of contract claim.  (Doc. 14–1 at 8, 14–16.)  Plaintiff counters that New York does not have a substantial relationship with the parties or the transaction at issue, so California law applies to the instant claim.  (Doc. 22 at 4–5.)

A federal court sitting in diversity applies the forum state's choice of law rules to determine the controlling substantive law.  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).  Federal courts in California with diversity jurisdiction over a matter follow California choice of law rules.  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  "Like federal courts in the Ninth Circuit, California state courts look to the Restatement (Second) of Conflicts of Law (1971) for the choice of law rules" which "applies if parties have entered into an agreement, negotiated at arm's-length, which selects a particular state's law to govern their contractual relationship."  *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1036 (S.D. Cal. 2017).  In California, a party advocating for the application of a particular state's law pursuant to a contractual choice of law provision has the burden of establishing whether: (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) there is any other reasonable basis for the parties' choice of law.  *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 466 (1992).  The burden then "shifts to the party opposing application of the choice-of-law provision to demonstrate that the provision would violate a fundamental policy of California."  *Power Integrations, Inc. v. De Lara*, No. 20-CV-410-MMA (MSB), 2020 WL 1467406, at *6 (S.D. Cal. Mar. 26, 2020).

Here, because Dynamic Data contends the New York choice of law provision in the PPA should be upheld, Dynamic Data bears the burden of establishing either a substantial relationship with the selected state or reasonable basis for choosing the selected state.  *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 466.  Dynamic Data explains the transaction at issue has

a substantial relationship to New York because "[t]he subject matter of the PPA was the sale of patents that were developed in Briarcliff, New York" and "many of the inventors of the patents lived in New York at the time and continue to reside in the State." (Doc. 14–1 at 15.) Moreover, "when one of the patents that is the subject of the PPA was challenged before the Patent Trial and Appeals Board, New York State employment law was analyzed in upholding the validity of the patent." (*Id.* at 16.) Accordingly, Dynamic Data contends "there was a reasonable basis to choose New York law to govern the PPA and New York has a substantial relationship to the Patents." (*Id.*)

Plaintiff challenges Dynamic Data's contention that New York has a substantial relationship with the instant transaction and argues "there is no reasonable basis to apply New York law." (Doc. 22 at 5.) Plaintiff explains that the exhibits Dynamic Data submitted in its request for judicial notice indicate that "some of the inventors on three likely cherry-picked patents – out of the approximately 1,400 [Dynamic Data] purchased from [MaxLinear] – resided in New York 14 years ago or more when those patents were issued." (*Id.*) It is Plaintiff's position that "[t]he prior residence of some long-forgotten inventors of less than half of one percent of the patents [Dynamic Data] purchased has nothing to do with the parties or PPA whatsoever." (*Id.* at 6.)

The Court does not believe New York has a substantial relationship to the parties or their transaction. California courts routinely find that a "substantial relationship exists where one of the parties is incorporated or maintains a principal place of business in the chosen state." *BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*, 364 F. Supp. 3d 1115, 1119 (E.D. Cal. 2019); s*ee, e.g.*, *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 257 (2015); *Hughes Elecs. Corp. v. Citibank Del.*, 120 Cal. App. 4th 251, 258 (2004). Here, neither Dynamic Data nor MaxLinear is incorporated in or maintains a principal place of business in New York. (*See* Doc. 1 at 2.) Both Dynamic Data and MaxLinear are incorporated in Delaware and have their principal places of business in California. (*Id.*) Thus, it appears doubtful whether New York has a substantial relationship to the parties or the instant transaction.

8

Nonetheless, the Court considers whether there is "any other reasonable basis" for the choice of law selection. *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 466. In reviewing the briefing, the Court finds Dynamic Data has demonstrated a reasonable basis for the PPA's choice of law provision. *See King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 865 (N.D. Cal. 2019) (explaining that "[t]he reasonable basis test is a lower standard than substantial relationship") (internal citations omitted). Dynamic Data explains that "[t]he subject matter of the PPA was the sale of patents that were developed in Briarcliff, New York where Koninklijke Philips N.V. ('Philips') has its North American research laboratory. And many of the named inventors of those patents worked for Philips in New York and/or resided in New York at the time the patents were invented." (Doc. 29 at 6.) Given that at least some of the patents have a connection to New York and both Dynamic Data and MaxLinear, represented parties, contracted for any disputes to be resolved in accordance with New York law, the Court finds a reasonable basis for the selection exists. *See King.*, 393 F. Supp. 3d at 865 (finding reasonable basis for applying New York choice of law provision when app had "40 million or more users spread across multiple jurisdictions" and had a "substantial number of New York users"); *see Airgo, Inc. v. Horizon Cargo Transp., Inc.*, 670 P.2d 1277, 1281 (1983) ("[w]hen the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied").

Having found that there is a reasonable basis for the New York choice of law provision, the Court next considers whether the application of New York law would be contrary to a fundamental policy of the forum state. A fundamental policy must be "substantive," and "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." *Century 21 Real Est. LLC v. All Pro. Realty, Inc.*, 889 F. Supp. 2d 1198, 1216 (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir. 2015). Here, Plaintiff provides no reasoning as to why the instant choice of law provision "would violate

a fundamental policy of California." *See Power Integrations, Inc.*, 2020 WL 1467406, at *6. Thus, the Court finds the PPA's New York choice of law provision enforceable.

### ii.    Third-Party Beneficiary

Plaintiff is not a party to the PPA, and Plaintiff's ability to state a claim against Dynamic Data for breach of contract turns on whether Plaintiff may be considered a third-party beneficiary of the PPA. New York law provides that "[i]n order to qualify as a third-party beneficiary, a party must be an intended, and not an incidental, beneficiary. If the third-party happens to benefit from the performance of the contract either indirectly or coincidentally, such third person has no rights under the contract." *Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403, 428 (W.D.N.Y. 2017); *see Benedictine Hosp. v. Hosp. Underwriters Mut. Ins. Co.*, 103 A.D.2d 553, 556, 481 N.Y.S.2d 813, 816 (1984) ("[t]o be a third-party beneficiary, the claimant must show an intent of the parties to an agreement to benefit the claimant . . . [i]f there is no such intent, a claimant is an incidental beneficiary to the contract and has no enforceable rights thereunder").

Dynamic Data explains that the parties to the PPA are MaxLinear, defined in the PPA as "Seller", and Dynamic Data, defined in the PPA as "Buyer." (Doc. 14–1 at 19.) Plaintiff is referred to in the PPA as "Seller's Patent Representative." (*See* Doc. 1.) The PPA expressly provides that "the purpose of the [PPA is] as follows: 'Seller wishes to sell, transfer, assign and set over unto Buyer, and Buyer wishes to purchase, accept and assume, all rights, title and interest in and to the Patents.'" (Doc. 14–1 at 19 (quoting Doc. 1 at 23).) Therefore, "[t]he entirety of Dynamic Data's obligation to pay for the Patents thus flowed directly to the Seller under the PPA." Dynamic Data argues that, for this reason alone, Plaintiff's third-party beneficiary claims fails as a matter of law because, pursuant to New York law, "third-party status may be established where only the third party may recover if the promisor breaches the contract; conversely, if another besides the third party may recover, beneficiary status is negated." (Doc. 14–1 at 17, 19–20 (quoting *United Int'l Holdings v. Wharf Ltd.*, 988 F. Supp. 367, 373 (S.D.N.Y. 1997).) Additionally, "the PPA makes clear that 'Seller is responsible for any fees (including legal and broker fees)

10

incurred by Seller . . . .'" (Doc. 14–1 at 20 (quoting Doc. 1 at 25).)  Dynamic Data contends that any fees allegedly due to Plaintiff as MaxLinear's patent broker fall into this category and, therefore, Plaintiff's "third-party beneficiary claim against Dynamic Data, the Buyer under the PPA, contravenes the clear terms of the PPA and fail as a result."  (Doc. 14–1 at 21.)  Finally, Dynamic Data argues that Plaintiff is, at most, an incidental beneficiary under the PPA and is not entitled to recovery under New York law.  (*Id.* at 21–22.)  To the extent Plaintiff is entitled to recover, such recovery flows from the TRA agreement between Plaintiff and MaxLinear.  (*Id.* at 23.)

Plaintiff counters that it is an express, intended beneficiary under the PPA.  (Doc. 22 at 7.)  Plaintiff explains that "[Dynamic Data] expressly obligated itself to make payments directly to [Plaintiff] and did, in fact, make an 'Upfront Guaranteed Payment' directly to [Plaintiff] as the Seller's Patent Sales Representative."  (*Id.* at 7–8.)  Moreover, Plaintiff explains that it is the only party that could recover for Dynamic Data's failure to pay Plaintiff under the PPA.  (*Id.* at 11.)  Accordingly, Plaintiff "is seeking to enforce only the contractual provision in the PPA providing it a direct benefit (i.e., [Dynamic Data]'s obligation to make set payments based on revenue the patents generate)."  (*Id.* at 12.)  Lastly, Plaintiff contends its claims do not contradict any terms in the PPA.  (*Id.*)  Plaintiff does not dispute that MaxLinear is responsible for any fees "incurred by seller."  (*Id.* at 13.)  However, it is Plaintiff's position that "[i]f [Dynamic Data] and MaxLinear wanted to put the obligation to pay [Plaintiff] solely on MaxLinear, they could have agreed to such language (i.e., by saying 'Seller is responsible for any fees (including legal and broker fees) owed to Seller's Patent Sale Representative . . .'), but they did not."  (*Id.*)

In reviewing the foregoing, the Court finds that, in accordance with New York law, Plaintiff may be considered third-party beneficiary of the PPA.  The PPA is an agreement representing a transaction between MaxLinear and Dynamic Data for the sale and purchase of the Patents.  (*See* Doc. 1 at 4–5.)  However, Plaintiff was designated to receive certain benefits and payments pursuant to the terms of the PPA.  For example, the PPA provides that "Buyer shall pay . . . Seller's Patent Sale Representative a lump sum, cash payment. .

11

. " and "Buyer shall pay . . . Seller's Patent Sales Representative deferred payments . . . in the following amounts . . . ." (Doc. 1 at 24); *see Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 44 (1985) ("[e]ssential to the status as an intended beneficiary . . . is that the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance"); *see also BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir.1993) ("[a] beneficiary of a promise is an intended third party beneficiary when, *inter alia,* recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and the performance will satisfy an obligation of the promisee to pay money to the beneficiary").  The intent to benefit Plaintiff via various payments was expressly memorialized in the contract, and the Court finds the plain language of the contract sufficient to establish Plaintiff's third-party beneficiary status.

            *iii.*    *Elements of Breach of Contract Cause of Action*

In New York, to sufficiently state a claim for breach of contract, a plaintiff must show: (1) the existence of a contract, (2) plaintiff's performance under the contract, (3) defendant's breach of that contract, and (4) resulting damages." *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 69 A.D. 3d 802, 803 (2010).

Here, the Complaint alleges that MaxLinear and Dynamic Data entered into the written PPA "expressly intending the PPA to benefit [Plaintiff] as the 'Seller's Patent Sales Representative.'" (Doc. 1 at 7.)  "Therein, [Dynamic Data] agreed that in exchange for receiving the Patents it would compensate [Plaintiff] specific portions of the Buyer Proceeds it was able to generate enforcing the Patents." (*Id.*)  Plaintiff contends it performed all obligations required of it pursuant to the PPA. (*Id.*)  However, Dynamic Data "has failed to perform its obligation to compensate [Plaintiff]" in accordance with the terms of the PPA which requires paying the required Buyer Proceeds. (*Id.*)  As a result of Dynamic Data's alleged breach, Plaintiff contends it has sustained substantial damages. (*Id.* at 8.)

Accordingly, the Court finds the Complaint sufficiently states a claim for breach of contract, and Dynamic Data's Motion is **<u>DENIED</u>** as to Plaintiff's second cause of action.

### b.      Third Cause of Action – Accounting

Plaintiff's third cause of action for accounting contends that Plaintiff "is entitled to a full and complete accounting of the books, records and receipts of Defendants as it relates to the TRA and PPA, and amounts each has received pursuant to the PPA . . . in order to determine the amounts [Dynamic Data] and MaxLinear properly owe to [Plaintiff] pursuant to those two agreements."  (Doc. 1 at 8.)

Dynamic Data argues Plaintiff's accounting claim against Dynamic Data fails as a matter of law because: (1) Plaintiff is not a third-party beneficiary of the PPA or its accounting provision, (2) Plaintiff alleges no facts, nor could it, demonstrating the sort of fiduciary or confidential relationship between Plaintiff and Dynamic Data necessary for a standalone accounting claim, and (3) Plaintiff's accounting claim is duplicative of its breach of contract claim.  (Doc. 14–1 at 9.)  Plaintiff explains that had Dynamic Data presented its position on this cause of action to Plaintiff, Plaintiff "would have agreed to dismiss it."  (Doc. 22 at 18.)  Accordingly, "[u]pon review of the facts and law in connection with an [a]ccounting claim, [Plaintiff] voluntarily dismisses this cause of action."  (*Id.*)

Given that Plaintiff consents to dismissal of his third cause of action for accounting, the Court finds dismissal appropriate.   Accordingly, Dynamic Data's Motion is **GRANTED** as to Plaintiff's third cause of action.

### C.      Requests for Attorneys' Fees and Damages

### a.      Request for Attorneys' Fees

Dynamic Data argues Plaintiff's request for attorneys' fees should be dismissed. (Doc. 14–1 at 28.) Dynamic Data explains that since Plaintiff is not an intended third-party beneficiary of any provision of the PPA, Plaintiff cannot rely on the PPA's prevailing party attorneys' fees provision.  (*Id.*)  Moreover, the PPA expressly limits attorneys' fees to the Parties (i.e., Buyer and Seller), and the attorneys' fees provision "is part of, and integral to, the mandatory arbitration provision in the PPA."  (*Id.* at 28–29.)  Therefore, even assuming Plaintiff was a third-party beneficiary of the PPA, "it only would be entitled to fees if it

13

1    were a prevailing party in an arbitration." (*Id.* at 30.)

2         Plaintiff explains that it "agrees with [Dynamic Data's] analysis of the attorneys'

3    fees claim" because Dynamic Data's argument "is consistent with a plain reading of the

4    express language of the contract." (Doc. 22 at 18–19.) However, Plaintiff contends

5    Dynamic Data "wants to have its cake and eat it too" because "[i]f [Dynamic Data's]

6    argument that excluding reference to [Plaintiff] in the attorneys' fees provision means

7    [Plaintiff] cannot recover its attorneys' fees, consistency mandates that [Dynamic Data]

8    likewise cannot compel arbitration, which is contractually limited to 'any dispute between

9    [the Parties] regarding any matter related to or arising out of [the PPA].'" The PPA defines

10   "Parties" as Seller and Buyer. (*See* Doc. 1.)

11        Plaintiff's argument is well taken. However, the Court notes Plaintiff and Dynamic

12   Data cannot have it both ways. Neither may rely on the contract, when it works to their

13   advantage, and repudiate it when it works to their disadvantage. *Tepper Realty Co. v.*

14   *Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966). No party has moved to compel

15   arbitration at this juncture, and the Court need not determine whether compelling

16   arbitration is proper at this time. However, it is well established that "[u]nder New York

17   law, a third-party beneficiary to a contract has the same rights as the contracting parties."

18   *Am. Elec. Power Co v. Westinghouse Elec. Corp.*, 418 F.Supp. 435, 449–50

19   (S.D.N.Y.1976). Accordingly, as an intended third-party beneficiary, the Court finds that,

20   if successful, Plaintiff may be entitled to attorneys' fees such that exclusion is not

21   warranted at this stage of the proceedings. To the extent Plaintiff wishes to voluntarily

22   dismiss its request for attorneys' fees, it may do so. However, the Court will not make a

23   finding as to mandatory arbitration at this time.

24              **b.    Request for Damages**

25        Dynamic Data argues the amount Plaintiff requests for damages is precluded under

26   the PPA's limitation of liability provision which provides that "[a]ny liability to Seller or

27   Buyer regarding or resulting from this Agreement, including but not limited to any alleged

28   breach of a representation or warranty listed in Section 10 above, shall be capped at an

amount equal to any monies due to Seller pursuant to Section 4(a) above." (Doc. 14–1 at 25 (quoting Doc. 1 at 28).) Dynamic Data explains limitation of liability provisions should be applied strictly "regardless of their economic consequences." (Doc. 14–1 at 26.) Thus, it is Dynamic Data's contention that, if Plaintiff's claims were to proceed, Plaintiff's potential recovery should be limited in accordance with the PPA's limitation of liability provision. (*Id.* at 27–28.)

Plaintiff counters that the limitation of liability provision is inapplicable to Plaintiff because in strictly proposing the provision, as Dynamic Data proposes, the damages cap applies to Seller and Buyer, which are clearly defined in the PPA. (Doc. 22 at 15.) Plaintiff is referenced in the PPA as "Seller's Patent Representative", and Dynamic Data and MaxLinear "could have expressly stated that the Limitations of Liability clause also applied to the Seller's Patent Sales Representative, but the drafters chose not to do so." (*Id.*)

As previously discussed, neither party may rely on the PPA when it works to their advantage and repudiate it when it works to their disadvantage. *See Tepper Realty Co.*, 259 F. Supp. at 692. Therefore, the Court will not allow Plaintiff to recover attorneys' fees in accordance with the PPA while simultaneously determining the limitation of liability provision does not apply to Plaintiff's claims. *See Am. Elec. Power Co.*, 418 F. Supp. at 449–50 ("[i]t would be inconsistent . . . for the non-signatory plaintiffs to assert vigorously that they are parties to the . . . contract by virtue of agency or third party beneficiary doctrine, while at the same time contending that they are not bound by the limited remedies for breach incorporated in the precise terms of the agreement"). Similarly, Dynamic Data will be unsuccessful in arguing Plaintiff is precluded from relying on the PPA's attorneys' fees provision while also contending the limitation of liability provision applies to Plaintiff and reduces Plaintiff's request for damages. All parties are cautioned against the selective applicability of the terms and provisions of the PPA. Accordingly, and in conjunction with the previous discussion regarding attorneys' fees (*see supra* pp. 13–14), the Court finds the PPA's limitation of liability of provision applies to Plaintiff as a third-party beneficiary of

the PPA.  *See Saska v. Metro. Museum of Art*, 42 Misc. 3d 548, 561 (Sup. Ct. 2013), *aff'd sub nom. Grunewald v. Metro. Museum of Art*, 125 A.D.3d 438 (2015) ("[t]hird-party beneficiaries do not have contractual rights that go beyond or contravene the explicit terms of the contract"); *Rector v. Calamus Grp., Inc.*, 17 A.D.3d 960, 962 (2005) (finding the third-party beneficiary of the contract was "bound by the terms of that contract, including the limitation of liability provision" even when she did not sign the agreement); *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 170 F. Supp. 3d 488, 504 (W.D.N.Y. 2016) ("although a third-party beneficiary is entitled to the rights possessed by the contracting parties, it cannot simultaneously challenge the limited remedy provisions of the warranty based on a theory that it did not have notice of the provisions").

## IV.   CONCLUSION

Based on the foregoing, Dynamic Data's Motion (Doc. 45) is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **DENIED** as to Plaintiff's second cause of action for breach of contract, and the Motion is **GRANTED** as to Plaintiff's third cause of action for accounting.  The Court hereby **DISMISSES** Plaintiff's third cause of action for accounting.

**IT IS SO ORDERED.**

DATE:  June 7, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

16

3:22-cv-01084-RBM-DDL